# UNITED STATES DISTRICT COURT

for the

Eastern District of California

<table>
<tr><td>In the Matter of the Search of<br><br>APPLE IPHONE LISTED WITH PROPERTY TAG<br>NO. SA1287407-1 AND APPLE IPHONE WITH<br>PROPERTY TAG NO. SA1287407-2, CURRENTLY<br>LOCATED AT THE SACRAMENTO POLICE<br>DEPARTMENT, DIGITAL FORENSICS UNIT,<br>LOCATED AT 5770 FREEPORT BOULEVARD,<br>SACRAMENTO, CALIFORNIA.</td><td>Case No.<br><br>2:25-sw-0901 CKD</td></tr>
</table>

**FILED**

**Oct 28, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☒ Continued on the attached sheet.
- ☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____/s/_____
*Applicant's signature*

Ryan Oliver, Task Force Officer, ATF
*Printed name and title*

Sworn to before me and signed telephonically

Date: __October 28, 2025 at 3:07 pm__

City and state: ___Sacramento, California___

_____
*Judge's signature*

Carolyn K. Delaney, U.S. Magistrate Judge
*Printed name and title*

1  ERIC GRANT
   United States Attorney
2  BRAD NG
   Special Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700
   Facsimile:  (916) 554-2900
5

6  Attorneys for Plaintiff
   United States of America
7

8              IN THE UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10

11  In the Matter of the Search of:          CASE NO.

12  APPLE IPHONE LISTED WITH PROPERTY        AFFIDAVIT IN SUPPORT OF AN APPLICATION
    TAG NO. SA1287407-1 AND APPLE            UNDER RULE 41 FOR A WARRANT TO
13  IPHONE WITH PROPERTY TAG NO.             SEARCH DEVICE
    SA1287407-2, CURRENTLY LOCATED AT
14  THE SACRAMENTO POLICE
    DEPARTMENT, DIGITAL FORENSICS
15  UNIT, LOCATED AT 5770 FREEPORT
    BOULEVARD, SACRAMENTO,
16  CALIFORNIA.
17

18       I, Ryan Oliver, being first duly sworn, hereby depose and state as follows:

19              I.       **INTRODUCTION AND AGENT BACKGROUND**

20       1.       I submit this affidavit in support of an application under Federal Rule of Criminal

21  Procedure 41 for a search warrant authorizing the examination of electronic devices which are currently

22  in law enforcement possession, and the extraction of that property for electronically stored information.

23  In particular, the property to be searched is as follows, as described herein and in **Attachment A**:

24              a)       An Apple iPhone, in a red case, seized from Cornelius HOUSTON on October 7,

25  2025 by the Sacramento Police Department ("SPD") and booked as evidence under SPD

26  Property Tag No. SA1287407-1, hereinafter referred to as **DEVICE #1**;

27              b)       An Apple iPhone, in a clear case, seized from Cornelius HOUSTON on October

28  7, 2025 by SPD and booked as evidence under SPD Property Tag No. SA1287407-2,

1    hereinafter referred to as **DEVICE #2**.

2        2.      The items to be seized are the electronically stored information further described in

3    **Attachment B**.

4                                **II.       AGENT BACKGROUND**

5        3.      I am a Task Force Officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and

6    Explosives ("ATF"), United States Department of Justice, Sacramento, California.  I am an investigative

7    or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7).  I am

8    authorized pursuant to Federal Rule of Criminal Procedure Rule 41(a)(2)(C) to request a search warrant.

9    I have been a sworn peace officer in the State of California since December 2000.  I have been a TFO

10   with the ATF and a Sworn Special Deputy United States Marshal since September 2015.  During my

11   years as an ATF TFO, I have investigated violations of both federal and state laws pertaining to drug

12   trafficking and firearms.  During those investigations I have become familiar with the means in which

13   illegal users of drugs and persons prohibited from possessing firearms receive and/or obtain firearms.  I

14   have also become familiar with the means in which drug traffickers obtain and distribute drugs.  During

15   my years as a sworn peace officer, I have investigated no less than twenty individuals for possession

16   and/or distribution of drugs.  I have been qualified as an expert in possession of drugs for sale multiple

17   times in the State of California, County of Sacramento Superior Court.  I have received no less than one

18   hundred hours of training specifically related to drugs.

19       4.      I am currently assigned to the ATF Sacramento Field Office as a member of a regional

20   task force.  While conducting task force related operations, I have observed illegal firearm transfers and

21   drug distribution.  Through my training and experience, I am familiar with the modus operandi of

22   individuals illegally trafficking firearms and drugs.

23       5.      I have been actively involved as case agent in over 50 investigations and have talked with

24   confidential informants involved in the trafficking of narcotics.  Through my training and experience, I

25   know that narcotics traffickers use mobile telephones to communicate with one another, either by voice

26   or text message.  Additionally, drug traffickers use multiple telephones to facilitate the different aspects

27   of negotiations and coordination of drug trafficking.

28       6.      The facts and information set forth herein are based upon my personal knowledge and

1  observations, observations of other law enforcement personnel, observations of cooperating individuals

2  as related to me and other law enforcement personnel, my review of investigative reports, and

3  discussions with other federal, state, and local law enforcement officials.  Where I describe statements

4  made by other people (including other agents and law enforcement officers), the statements are

5  described in sum, substance, and relevant part.  Similarly, where I describe information contained in

6  reports and other documents or records in this affidavit, this information is also described in sum,

7  substance, and relevant part.  This affidavit is intended to show only that there is sufficient probable

8  cause for the requested warrant and does not set forth all of my knowledge about this matter.

9        7.      Based on the facts set forth in this affidavit, there is probable cause to believe that

10 violations of **18 U.S.C. §§ 922(g)(1)** (felon in possession of a firearm) have been committed by

11 Cornelius HOUSTON.  There is also probable cause to search the items described in **Attachment A** for

12 evidence of these crimes as further described in **Attachment B**.

13                      **III.      PROBABLE CAUSE**

14       8.      On August 25, 2025, I became aware that Cornelius HOUSTON had been arrested by

15 officers from the Sacramento Police Department's North Violent Crime Reduction Team (NVCR) for

16 being a convicted felon in possession of a firearm under Sacramento Police Department (SPD) report

17 25-210240.  Based upon HOUSTON's past criminal history which included robbery, a felony violation

18 of California Penal Code section 211, in Sacramento County Superior Court, and transportation, sale, or

19 distribution of a controlled substance, a felony violation of California Health and Safety Code section

20 11352, subdivision (a), in Sacramento County Superior Court, I sought to federally adopt the felon in

21 possession case against HOUSTON.

22       9.      On October 2, 2025, I presented the facts of SPD report 25-210240 to a federal grand jury

23 in the Eastern District of California.  The grand jury returned a true bill, and an arrest warrant was issued

24 for HOUSTON by the Honorable Magistrate Judge Chi Soo Kim for a violation of 18 U.S.C. §

25 922(g)(1).

26       10.     On October 7, 2025, HOUSTON was scheduled to make a court appearance at the

27 Sacramento County Superior Court located at 651 I Street, Sacramento, California for the State of

28 California charges against him.  I planned on having marked SPD units contact HOUSTON and take

1   him into custody for HOUSTON's active federal arrest warrant.  I conducted an operational briefing

2   with multiple SPD law enforcement officers and one ATF special agent.

3          11.     At approximately 09:00 hours, SPD Sergeant Trefethen observed a white Chevrolet

4   Suburban driving southbound on 7th Street past I Street.  Sergeant Trefethen observed HOUSTON to be

5   the driver of the vehicle.

6          12.     At approximately 09:05 hours, I observed HOUSTON walking northbound on 7th Street

7   at I Street.  HOUSTON then walked westbound on I Street and I observed him walking through the

8   main doors of 651 I Street.  I then observed HOUSTON exit 651 I Street for a few moments and then

9   walked back inside.  Once HOUSTON was back inside 651 I Street he was taken into custody by SPD

10  Officers Del Dotto, Powers, and Cumberland at the security check point of 651 I Street.  As HOUSTON

11  was being taken into custody, Officer Del Dotto observed multiple items belonging to HOUSTON on a

12  counter at the security check point for the courtrooms located inside 651 I Street.  Two of the items on

13  the counter were cell phones, both of which were Apple iPhones, one of which was in a red case

14  (**DEVICE #1**), and the other in a clear case (**DEVICE #2**).  Also on the counter was a black Chevrolet

15  key fob.

16         13.     Sergeant Trefethen, and SPD Detectives Nedeljkovic and Cuckovich went to the

17  Chevrolet Suburban (California license 9REM955) that Sergeant Trefethen had observed HOUSTON

18  driving.  The Chevrolet Suburban was parked in a covered parking lot located at 601 J Street,

19  Sacramento, Eastern District of California.  Sergeant Trefethen and Detective Nedeljkovic observed

20  processed marijuana on the rear passenger floorboard of the vehicle.  Based upon probable cause of

21  illegal transportation of marijuana in an open container (in violation of California Vehicle Code §

22  23222(b)), Detective Nedeljkovic searched the vehicle and located one Glock model 30, .45 caliber,

23  seral number YMP922 under the front driver seat of the vehicle.  The Glock had a live round of

24  ammunition in the chamber and approximately 9 live rounds loaded into the magazine that was inserted

25  into the firearm.  Detective Nedeljkovic also located 101.67 grams of marijuana in the vehicle's

26  glovebox, and indicia in HOUSTON's name in the vehicle.  Detective Nedeljkovic noted that the key in

27  HOUSTON's possession at the time of his arrest was the key for the Chevrolet Suburban.

28

14.    Detective Nedeljkovic later booked all items of evidence including **DEVICE #1** and **DEVICE #2**.

15.    I conducted a records check of the Glock model 30, .45 caliber, serial number YMP922. I did not locate any records related to the firearm.

16.    **DEVICE #1** and **DEVICE #2** are currently in the lawful possession of the Sacramento Police Department**. DEVICE #1** and **DEVICE #2** came into the Sacramento Police Department's possession in the following way: **DEVICE #1** and **DEVICE #2** were seized from HOUSTON as he was taken into custody on a federal arrest warrant, but after HOUSTON was taken into custody, a fresh crime of HOUSTON being in possession of an additional firearm was discovered.

17.    **DEVICE #1** and **DEVICE #2** are currently in storage at the SPD Digital Forensics Unit located at 5770 Freeport Boulevard, Sacramento, Eastern District of California. In my training and experience, I know that **DEVICE #1** and **DEVICE #2** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the Sacramento Police Department.

18.    Your affiant is familiar with HOUSTON from prior investigations by the Sacramento Police Department, including an on-going investigation into a shooting that occurred in the City and County of Sacramento on February 15, 2025. During that investigation, SPD detectives lawfully seized HOUSTON's cell phone and conducted a forensic download of HOUSTON's cell phone pursuant to a State of California search warrant. SPD investigators were able to partially download the contents of HOUSTON's cell phone and located numerous photographs of HOUSTON, including photographs of HOUSTON in intimate settings and HOUSTON's state-issued driver's license.

19.    Located within HOUSTON's cell phone, SPD detectives located a photograph of a black AR-15 style pistol on a table in front of a male wearing red flannel pajama pants. The male's face is not shown but the visible tattoos appear to be the same tattoos that HOUSTON has. The metadata for this photograph indicated that the photograph was taken on February 10, 2025, five days prior to the shooting.

20.    SPD detectives also located a photograph of HOUSTON wearing the same red flannel pajama pants.  The metadata for this photograph indicated that the photograph was taken pm January 26, 2025, approximately two-and-a-half weeks prior to the shooting.

21.    Both of the aforementioned images are shown below:

 

22.    Based on my training and experience, from the combination of these photographs, your affiant formed the opinion that the male standing over the black AR-15 style pistol is HOUSTON.

## IV.    TECHNICAL TERMS

23.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number,

date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader.  Removable storage media include various types of flash memory cards or miniature hard drives.  Most digital cameras also include a screen for viewing the stored images.  This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files.  However, a portable media player can also store other digital data.  Some portable media players can use removable storage media.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can also store any digital data.  Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another location.  These devices can contain records of the addresses or locations involved in such navigation.  The Global

Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

24.    Based on my training, experience, and research, I know that **DEVICE #1** and **DEVICE #2** have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA**. DEVICE #1** and **DEVICE #2** also have the capability to access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## V.    TRAINING AND EXPERIENCE REGARDING CELLULAR DEVICES

25.    Based on my knowledge, training, and experience as a TFO for ATF, as well as conversations with other special agents and investigators from local, state, and federal law enforcement entities, I know that individuals who engage in criminal activity often use cellular phones as part of their criminal activity.  This includes using telephones to arrange for the purchase or the sale of controlled substances or firearms.  I know that people who negotiate the sale of contraband will often use cell phones to contact co-conspirators to obtain additional quantities of drugs or firearms.  I also know that photos of firearms, drugs, and/or currency are often stored on such devices and shared between co-conspirators.  These communications often occur by voice calls, text messages, and communication apps such as Signal, WhatsApp and Telegram.  These communications may also occur over social media apps such as Instagram and Facebook that are connected to the internet and can be accessed by use of a cell phone.  These conversations often include pictures of available firearms, the price of the firearm and the location to meet to conduct the illegal transfer of the firearm.

26.    It has been my experience that people engaged in drug and firearm trafficking utilize cellular telephones to maintain contact, either via telephone calls and/or text messaging or web-based app messaging, with close associates and people they trust, to include criminal associates, and that they carry these cellular phones with them during the course of their criminal activities.  Moreover, it has been my experience that people engaged in such criminal activities use these cellular phones to take photographs and videos of themselves, their criminal associates, and other items related to their criminal activities, and, in some cases, the proceeds from their illegal activities.  Relating to the ever-evolving level of cellular telephone technology, particularly increased storage capacity, through my training and experience I know that cellular phones can regularly store contacts, call logs, text messages, multimedia files, voicemail messages, and location/GPS data for months, and in some cases, years from the date of the event.

27.    Further, based on my training and experience, I know that persons who are prohibited from possessing firearms because of prior felony convictions often use cell phones to obtain firearms from an unlawful firearms trafficker, unlawful dealer in firearms, or other criminal associates.  For example, because a person who has previously been convicted of a crime punishable by more than one

1   year in prison cannot go to a storefront gun store with a federal firearms license, the individual may

2   instead peruse Instagram (a social media application) or connect with an illicit gun source via text

3   message or encrypted messaging applications.  Evidence of such communications about unlawful

4   transfer or acquisition of a firearm by the prohibited person may be retained on his or her cell phone(s).

5       28.     Based upon my training, experience and the conversations I had with other law

6   enforcement officers and/or reports that I have read, I have learned that individuals will often take

7   pictures and/or videos of themselves posing with firearms or other contraband on their cell phone.

8   These pictures and videos are stored on the device indefinitely and even if deleted, may still be

9   recovered during a forensic examination of the cell phone.  These pictures and/or videos are often proof

10  of possession of a firearm by the prohibited individual.  Your affiant is aware that a photograph of

11  HOUSTON with a black AR-15 style pistol was previously located in a cell phone possessed by

12  HOUSTON.  As a result, it is your affiant's opinion that there is probable cause to believe that **DEVICE**

13  **#1** and **DEVICE #2** will also have photographs and other content of HOUSTON with firearms.

14      29.     Based on my training and experience, I know that digital storage devices can maintain

15  stored data for years and that data will not be destroyed unless it is deleted by the user or the device is

16  physically compromised.  In this case, the target cell phones have been in continuous law enforcement

17  custody since the time they were seized.  Therefore, based on my training and experience, the contents

18  of these devices are in the same state is they were at the time their former users possessed them.

19      30.     I know from my training and experience, as well as that of experienced digital forensic

20  examiners with whom I have spoken, that these particular types of devices will have potentially relevant

21  data that may not be captured if a search is limited by a specified date range.  Failure to collect the

22  entirety of relevant data creates a high likelihood that relevant information, which could be inculpatory

23  or exculpatory information, would be excluded.

24      31.     Therefore, because date information within the files/data inside a digital device can be

25  altered, changed, and/or manipulated, by this warrant I am seeking permission to search and examine in

26  this investigation all the metadata, file data, setting data, photographic and video data, and

27  communication data on the digital device(s) since the date of inception of first data storage in the

28  device(s) to the date of warrant execution.

## VI.     <u>ELECTRONIC STORAGE AND FORENSIC ANALYSIS</u>

27.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

28.     *Forensic evidence.*  As further described in **Attachment B**, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.     The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

29. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

30. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

AFFIDAVIT

12

1

## VII.    CONCLUSION

2       32.    Based on the foregoing, there is probable cause that there is evidence on the cell phones

3    seized from Cornelius HOUSTON, for violations of 18 U.S.C. § 922(g)(1), and I request that the Court

4    issue a search warrant for these under Rule 41 of the Federal Rules of Criminal Procedure authorizing

5    the examination of the devices described in **Attachment A** to seek the items described in **Attachment**

6    **B**.

7

8                                                         Respectfully submitted,

9                                                              /s/

10                                                         Ryan Oliver
                                                          Task Force Officer
11                                                        Bureau of Alcohol, Tobacco, Firearms and Explosives
                                                          United States Department of Justice
12

13   Subscribed and sworn telephonically
     on:                                          October 28, 2025
14

15   _____
     The Honorable Carolyn K. Delaney
16   UNITED STATES MAGISTRATE JUDGE

17

18

19       _/s Brad Ng_
20   Approved as to form by SAUSA Brad Ng

21

22

23

24

25

26

27

28

## <u>ATTACHMENT A</u>

*Location to be Searched*

The location to be searched includes the following electronic devices, which are currently in the custody of the Sacramento Police Department, Digital Forensics Unit, located at 5770 Freeport Boulevard, Sacramento, California:

    a.  An Apple iPhone, in a red case, seized from Cornelius HOUSTON on October 7, 2025 by the Sacramento Police Department ("SPD") and booked as evidence under SPD Property Tag No. SA1287407-1, hereinafter referred to as **DEVICE #1**;

    b.  An Apple iPhone, in a clear case, seized from Cornelius HOUSTON on October 7, 2025 by SPD and booked as evidence under SPD Property Tag No. SA1287407-2, hereinafter referred to as **DEVICE #2**.

This warrant authorizes the forensic examination of the electronic devices listed above for the purpose of identifying the electronically stored information described in **Attachment B**.

## <u>ATTACHMENT B</u>

*Items to be Seized*

This search warrant grants authority to seize all the items set forth below:

1. All information and records related to violations of **18 U.S.C. § 922(g)(1) (felon in possession of a firearm)** and involved Cornelius HOUSTON, from the date of inception of data in the device or date of first data storage in the device to the date of warrant execution, including but not limited to:

   a. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the Electronic Device(s) identified in **Attachment A** or on a server and associated with the Electronic Device(s) identified in **Attachment A**, including:

   b. All communications content, including email, text (short message service (SMS)/multimedia message service (MMS), application chats, and/or social media messages stored within the device), notes, or voicemail. This data will also include attachments, source and destination addresses, and time and date information, and connection logs, images and any other records that constitute evidence and instrumentalities of possession of a firearm by a felon (18 U.S.C. § 922(g)(1)) including communications referring or relating to the above-listed criminal offenses, together with indicia of use, ownership, possession, or control of such communications or information found

   c. All location data. Location data may be stored as Global Positioning System (GPS) locations or cellular tower connection data. Location data may be found in the metadata of photos and social networking posts, Wi-Fi logs, and data associated with installed applications.

   d. All photographic/video/audio data and associated metadata located within the device(s), including but not limited to, images, video and other media captured by the device's integrated camera(s), any copies of photographic/video/audio data received and stored in the device(s), and any social media photographic/video/audio content received and stored within the device(s) to be searched.

   e. All internet history for the dates above, including cookies, bookmarks, web history, search terms.

   f. All financial information.

   g. All indicia of ownership and control for both the data and the cellular device, such as device identification and settings data, address book/contacts, social network posts/updates/tags, Wi-Fi network tables, associated wireless devices (such as known Wi-Fi networks and Bluetooth devices), associated connected devices (such as for backup and syncing), stored passwords, user dictionaries.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>APPLE IPHONE LISTED WITH PROPERTY TAG NO. SA1287407-1 AND APPLE IPHONE WITH PROPERTY TAG NO. SA1287407-2, CURRENTLY LOCATED AT THE SACRAMENTO POLICE DEPARTMENT, DIGITAL FORENSICS UNIT, LOCATED AT 5770 FREEPORT BOULEVARD, SACRAMENTO, CALIFORNIA. | Case No.  2:25-sw-0901 CKD |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ November 10, 2025 _____ *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   October 28, 2025 at 3:07 pm          _Carolyn K. Delaney_
                                                                                              *Judge's signature*

City and state:   Sacramento, California          Carolyn K. Delaney, U.S. Magistrate Judge
                                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned telephonically this date.

_____

_____
Signature of Judge                                                                 Date

## ATTACHMENT A

*Location to be Searched*

The location to be searched includes the following electronic devices, which are currently in the custody of the Sacramento Police Department, Digital Forensics Unit, located at 5770 Freeport Boulevard, Sacramento, California:

a.  An Apple iPhone, in a red case, seized from Cornelius HOUSTON on October 7, 2025 by the Sacramento Police Department ("SPD") and booked as evidence under SPD Property Tag No. SA1287407-1, hereinafter referred to as **DEVICE #1**;

b.  An Apple iPhone, in a clear case, seized from Cornelius HOUSTON on October 7, 2025 by SPD and booked as evidence under SPD Property Tag No. SA1287407-2, hereinafter referred to as **DEVICE #2**.

This warrant authorizes the forensic examination of the electronic devices listed above for the purpose of identifying the electronically stored information described in **Attachment B**.

## ATTACHMENT B

*Items to be Seized*

This search warrant grants authority to seize all the items set forth below:

1. All information and records related to violations of **18 U.S.C. § 922(g)(1) (felon in possession of a firearm)** and involved Cornelius HOUSTON, from the date of inception of data in the device or date of first data storage in the device to the date of warrant execution, including but not limited to:

   a. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the Electronic Device(s) identified in **Attachment A** or on a server and associated with the Electronic Device(s) identified in **Attachment A**, including:

   b. All communications content, including email, text (short message service (SMS)/multimedia message service (MMS), application chats, and/or social media messages stored within the device), notes, or voicemail. This data will also include attachments, source and destination addresses, and time and date information, and connection logs, images and any other records that constitute evidence and instrumentalities of possession of a firearm by a felon (18 U.S.C. § 922(g)(1)) including communications referring or relating to the above-listed criminal offenses, together with indicia of use, ownership, possession, or control of such communications or information found

   c. All location data. Location data may be stored as Global Positioning System (GPS) locations or cellular tower connection data. Location data may be found in the metadata of photos and social networking posts, Wi-Fi logs, and data associated with installed applications.

   d. All photographic/video/audio data and associated metadata located within the device(s), including but not limited to, images, video and other media captured by the device's integrated camera(s), any copies of photographic/video/audio data received and stored in the device(s), and any social media photographic/video/audio content received and stored within the device(s) to be searched.

   e. All internet history for the dates above, including cookies, bookmarks, web history, search terms.

   f. All financial information.

   g. All indicia of ownership and control for both the data and the cellular device, such as device identification and settings data, address book/contacts, social network posts/updates/tags, Wi-Fi network tables, associated wireless devices (such as known Wi-Fi networks and Bluetooth devices), associated connected devices (such as for backup and syncing), stored passwords, user dictionaries.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.